IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

STEVE NANCE,

       Plaintiff,

vs.                                                                    No. CIV-05-144 JB/WDS

CERTAIN UNDERWRITERS AT LLOYDS,
LONDON, SUBSCRIBING TO POLICY
NUMBER 501/NB03ACMD,
L.J. DOLLOFF ASSOCIATES, INC., and
L.J. DOLLOFF ASSOCIATES OF NEW
MEXICO, INC.,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) Notice of Removal, filed February 9, 2005

(Doc. 1); (ii) Defendant L.J. Dolloff Associates, Inc.'s Motion to Dismiss or Stay, filed February 14,

2004 (Doc. 3); and (iii) Underwriters' Motion to Dismiss or, in the Alternative, Motion to Strike and

Memorandum of Points and Authorities in Support, filed February 15, 2005 (Doc. 5).  In his

responses to the Defendants' motions to dismiss, the Plaintiff Steve Nance noted that he would be

filing a motion to remand, thus alerting the Court to possible jurisdictional issues.  See Plaintiff's

Reponse to L.J. Dolloff Associates' Motion to Dismiss or Stay, at 1, filed March 3, 2005 (Doc. 6);

Plaintiff's Response to Underwriters' Motion to Dismiss or to Strike, at 1, filed March 7, 2005 (Doc.

7).  On July 21, 2005, the Court sent out a Minute Order asking for information about jurisdiction.

See Doc. 11.  In response, the parties sent to the Court: (i) Letter from David G. Reynolds and L.

Edward Glass to the Court (dated July 29, 2005), filed July 29, 2005; (ii) Underwriters' Response

to the Court's Minute Order Dated July 22, 2005, filed July 29, 2005 (Doc. 13); and (iii) Letter from

Pete Domenici , Jr, to the Court, dated July 29, 2005.  The primary issue is whether the Court has jurisdiction over this case.  Because the Court concludes that there is not diversity of citizenship, the Court will remand the case to the Second Judicial District of New Mexico.

## FACTUAL BACKGROUND

Nance is a citizen and resident of the State of New Mexico.  <u>See</u> Complaint ¶ 1, at 1.  Certain Underwriters at Lloyds, London, Subscribing to Policy Number 501/NB03ACMD ("Underwriters") are engaged in the business of insurance in accordance with the laws of England, with its principal place of business in London, England.  <u>See</u> <u>Certain Underwriters at Lloyd's London, Subscribing to Policy Number 501/NB03ACMD v. Steven Nance, et al.</u>, Case No. CIV-04-0937 JB/RLP (D.N.M.).  There are five syndicates that have combined to issue Policy Number 501/NB03ACMD ("Policy").  The lead syndicate -- Syndicate 2488, <u>see</u> Policy at 19 (first syndicate listed) -- is comprised of a single British Corporation.  Similarly, Syndicate 190 is comprised of a single British Corporation.  The three remaining syndicates consist of both corporations and individuals.  The lead corporation and managing agent for each of these three syndicates is a British corporation.

L.J. Dolloff Associates, Inc. ("Dolloff of New York") is a New York corporation.  <u>See</u> Complaint ¶ 3, at 1; Notice of Removal ¶ 6, at 2.  Dolloff of New York's primary place of business is currently Buffalo, New York.  At the time of the events underlying Nance's judgment against L.J. Dolloff Associates of New Mexico, Inc. ("Dolloff of New Mexico"), Dolloff of New York had a branch office on Beach Road N.W. in Albuquerque, New Mexico.  Lawrence J. Dolloff is President, director, and owner of 100% of the shares of Dolloff.

Dolloff of New Mexico is a corporation, which was incorporated in the State of New Mexico.  Dolloff of New Mexico's principal office, as listed with the New Mexico PRC, is at Dolloff of York's

principal office in Buffalo, New York.  For several years, the errors and omissions policies that Underwriters issued to Dolloff of New York listed the New Mexico office of Dolloff of New Mexico as one of several "branch offices" of Dolloff of New York.  <u>See</u> Letter from David G. Reynolds and L. Edward Glass to the Court ¶ 3, at 2 .

In the state court action, Nance considered Dolloff of New York's actions so egregious that he filed a Verified Motion to Appoint Limited Receiver for Dolloff of New Mexico, which alleged numerous abuses by Dolloff of New York.  Neither Dolloff of New York or any party to the case denied the factual allegations of Nance's Verified Motion to Appoint Receiver.  As the court record establishes, Dolloff of New York did not hire defense counsel to defend Dolloff of New Mexico from Nance's claims.  It refused, unless the court compelled it to do so, to act on behalf of Dolloff of New Mexico in honoring its discovery obligations.  It allowed a default judgment to be taken against Dolloff of New Mexico.  It did not account for and safeguard the books and records of Dolloff of New Mexico. Lawrence Dolloff purported, on the date of the court's ruling granting Nance's Motion to Compel Dolloff of New York to respond to discovery requests, to resign as the last remaining officer and director of Dolloff of New Mexico.  Lawrence Dolloff effected the dissolution of Dolloff of New Mexico in October 2003, certifying that he had made adequate provision for the debts of that corporation as the state statute requires.  Dolloff of New York did not appear on behalf of Dolloff of New Mexico at the court-ordered settlement facilitation in the case so that he could protect Dolloff of New Mexico's interests through settlement of the matter; and he caused a Motion for Protective Order to be filed on his behalf, as President of Dolloff of New York, to prevent Nance's taking his depostion as a representative of Dolloff of New Mexico.

While Dolloff of New Mexico, Dolloff of New York, and Lawrence Dolloff did not oppose

Nance's receivership motion, Underwriters opposed it, arguing that coverage issues needed to be decided before the state court appointed any receiver. While the Honorable Geraldine E. Rivera, District Judge, Second Judicial District Court, agreed that Dolloff of New York's conduct was suspect and that his dissolution of Dolloff of New Mexico was improper, she agreed with Underwriters' position stating that coverage issues needed to be decided before any decision needed to be made on appointing a receiver.

Underwriters, as the garnishee in Second Judicial District Court No. CV-2003-03133, was made a party to a pending state court proceeding in which coverage issues had to be determined. Rather than remove the garnishment proceeding to federal court, however, Underwriters instead elected to involve the federal court for the first time by filing a new declaratory action in Case No. CIV-04-0937-JB/RLP.

Nance has obtained a judgment against Dolloff of New Mexico that has been reduced to a monetary amount. See Complaint ¶ 8, at 3. Dolloff of New Mexico is a defunct company. The sole living officer/director of Dolloff of New Mexico is Lawrence J. Dolloff. As such, Dolloff is in the driver's seat of Dolloff of New Mexico pursuant to NMSA 1978, § 53-16-24.

## PROCEDURAL BACKGROUND

On August 19, 2004, in response to Nance's action against Dolloff of New Mexico, Underwriters filed in federal court a Complaint for Declaratory Judgment that addressed whether insurance issued by Underwriters covered the claims Nance was making against Dolloff of New Mexico. See Certain Underwriters of Lloyd's of London, Subscribing to Policy Number 501/NB03ACMD v. Steven Nance and L.J. Dolloff Associates of New Mexico, Inc., No. CIV 04-0937 JB/RLP (D.N.M. filed August 19, 2004). On April 27, 2004, Nance obtained judgment against

Dolloff of New Mexico in the Second Judicial District.

On January 3, 2005, Nance filed a Complaint for Declaratory Judgment in the Second Judicial District Court, State of New Mexico, cause number D-202-CV-200500014, seeking a declaration that Dolloff of New York was responsible for the judgment against Dolloff of New Mexico and that Underwriters had an obligation to indemnify Dolloff of New Mexico and Dolloff of New York. Nance asserts that Dolloff of New York is the "alter ego" of Dolloff of New Mexico and therefore liable for Dolloff of New Mexico's debts. Underwriters was served with process in the state court action on January 12, 2005. In the Complaint, Nance alleges that a judgment in his favor and against Dolloff of New Mexico was entered on April 27, 2004 in the principal amount of $1,043,286.24. See Complaint ¶ 8, at 3 ("Judgment was obtained by Nance against [Dolloff of New Mexico] in Cause No. CV-03-03133 on April 27, 2004 in the principal amount of $1,043,286.24, with that award to bear interest at the rate of 8.75% ($250.10 per day) from the date of judgment until paid."). He contends that the judgment against Dolloff of New Mexico "was founded upon the negligent acts, errors or omissions committed by a person or persons for whose negligent acts, errors or omissions [Dolloff of New York] is legally responsible  and therefore covered under the terms of the Policy." Complaint ¶ 9, at 3. He also alleges that Dolloff of New Mexico is an "assured" under a policy that Underwriters issued to Dolloff of New York and, therefore, has an obligation to indemnify Dolloff of New Mexico for the judgment. See Complaint at  ¶¶ 10, b, at 3.

Certain Underwriters at Lloyds of London ("Underwriters") removed Nance's declaratory judgment action from state court to federal court pursuant to 28 U.S.C. §§ 1441 and 1446. In the Notice of Removal, Underwriters asks the Court to realign Dolloff of New Mexico as a party plaintiff or, alternatively, disregard its citizenship for purposes of determining the existence of complete

diversity of citizenship among the parties.  Although Underwriters suggests that Dolloff of New York may not be considered a proper party to this action, it consents to removal.  Underwriters maintains that Dolloff of New Mexico's consent is not required.  See Notice of Removal at 7 (citing 16 J. Moore, § 107.14[2][c][iv][A] (3d ed. 2004)("Although removal jurisdiction generally requires that all defendants join in the notice of removal . . . , nominal, unknown, sham and fraudulently joined defendants cannot prevent removal, and their existence is disregarded for purposes of determining diversity.").  In its Notice of Removal, Underwriters asks the Court to "make and enter such further orders as may be necessary and proper."  Id. at 7.

The Court's Minute Order requested information on three separate enumerated topics.  The Court directed the first set of questions to Nance.  The second, the jurisdictional questions, were directed to all parties.  The third topic is directed to Dolloff of New York.

## LAW REGARDING JURISDICTION

**1.       When and How Jurisdiction is Determined.**

The court's jurisdiction must be assessed by examining the complaint filed in the state court action as of the time of filing the notice of removal.  See Wis. Dep't of Corrections v. Schacht, 524 U.S. 381, 390 (1998)("[F]or purposes of removal jurisdiction, we are to look at the case as of the time it was filed in state court.")(citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 291 (1938)); Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d 1484, 1488 (10th Cir. 1991)("[T]he propriety of removal is judged on the complaint as it stands at the time of the removal.").

Generally, a determination of the existence of diversity jurisdiction is made based on the allegations set forth in a complaint or notice of removal.  See Whitelock v. Leatherman, 460 F.2d 507, 514 (10th Cir. 1972).  See also Holt v. United States, 46 F.3d 1000, 1002-03 (10th Cir.

1995)(noting that there are two jurisdictional challenges: (i) "a facial attack on the complaint's allegations," i.e., that the allegations are simply insufficient; or (ii) going beyond the allegations of the complaint to challenge the underlying facts supporting subject matter jurisdiction).

**2.     Fraudulent Joinder.**

In determining diversity of citizenship, courts "must disregard nondiverse parties that are fraudulently joined."   16 Moore's Federal Practice § 104.14[2][c][iv][A].  "To establish fraudulent joinder, a party must demonstrate either fraud in the recitation of the jurisdictional facts or the absence of any possibility that the opposing party has stated a claim under state law against the party alleged to be fraudulently joined." Id.  To show fraudulent joinder, parties may use evidence outside the initial pleadings.  See Smoot  v. Chicago, Rock Island & Pacific R. Co., 378 F.2d 879, 881 (10th Cir. 1967); Dodd v. Fawcett Publ'ns, Inc., 329 F.2d 82, 85 (10th Cir. 1964).

**3.     Realignment.**

In Farmers Alliance Mut. Ins. Co. v. Jones, 570 F.2d 1384, 1387 (10th Cir. 1978), the United States Court of Appeals for the Tenth Circuit explained: "In diversity suits, courts will scrutinize the interests of the parties in order to determine if their positions as plaintiffs and defendants conform to their real interests. When appropriate, parties will be realigned; however, this is to be done only after real rather than apparent interests have been ascertained."    Realignment is proper if the court finds that there is no "actual controversy" between citizens of different states.  See id. (in determining whether realignment was proper, the court looked at whether there was an actual controversy between plaintiffs and defendants, whether their interests were adverse, and whether a justiciable controversy existed between them); 16 Moore's Federal Practice § 104.14[2][c][vi].

In Davis v. Carey, 149 F.Supp.2d 593 (S.D. Ind. 2001), when Allstate was added as a

-7-

garnishee defendant, it removed the case to federal court, asserting diversity jurisdiction.  In denying the plaintiff's motion for remand, the court found that the plaintiff's and tortfeasor's interests were aligned in that it was in their mutual interest to have the insurance company pay on the policy.  The court realigned the tortfeasor as a plaintiff to conform to its true interests. See Davis v. Carey, 149 F.Supp.2d at 596.

The court reached the same result in Jackson HMA, Inc. v. St. Paul Fire & Marine Ins. Co., 246 F.Supp.2d 535 (S.D. Miss. 2003).  In Jackson HMA, the medical center and hospital, when faced with wrongful death lawsuits, sued its malpractice insurer and the survivors of deceased patients in a separate declaratory judgment action in state court, arguing that the insurance policy covered the medical malpractice claims.  The insurance company removed the declaratory action to federal court, alleging diversity jurisdiction.  The court agreed that the survivors of decreased patients should be realigned as party plaintiffs in the declaratory judgment action because their interests were aligned with those of the medical malpractice defendants -- both would benefit from the existence of coverage.  Consequently, the court realigned the parties, which created diversity jurisdiction and denied the motion to remand. Jackson HMA, Inc. v. St. Paul Fire & Marine Ins. Co., 246 F.Supp.2d at 538.

**4.      Amount in Controversy.**

The amount in controversy for removal jurisdiction is determined normally by reference to allegations in the plaintiffs' complaint.  See Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir. 1995).

## ANALYSIS

The allegations establish that the amount in controversy exceeds $75,000.00.  Underwriters

contends that the proper parties in this action are citizens of different state.  There is complete diversity between Nance and Underwriters, and between Nance and Dolloff of New York.  There does not appear, however, to be complete diversity between Nance and Doloff of New Mexico.  <u>See</u> Complaint ¶ 4, at 2.  There is no dispute that Dolloff of New Mexico is or was a citizen of New Mexico pursuant to 28 U.S.C. § 1332(c)(1).  Thus, as presently pled and aligned, New Mexico citizens exist on both the Plaintiff and Defendant sides.

Underwriters contends that Nance has fraudulently joined Dolloff of New Mexico as a  party. Underwriters argues that Nance has failed to state any valid claims against Dolloff of New Mexico. Alternatively, Underwriters maintains that, even if Dolloff of New Mexico has not been fraudulently joined, it has been improperly designated as a defendant and that the Court should realign it to reflect its true position within the litigation.  Underwriters states that, given the complete diversity of the real parties -- either through the realignment or through a determination that Nance has fraudulently joined Dolloff of New Mexico -- the Court has jurisdiction over the causes of action and the claims asserted pursuant to 28 U.S.C. § 1332 and that it properly removed the case pursuant to 28 U.S.C. § 1441.

The Defendants have not established that the Court has jurisdiction based on diversity.

I.     <u>**NANCE DID NOT FRAUDULENTLY JOIN DOLLOFF OF NEW MEXICO.**</u>

Underwriters asserts that, in the absence of the allegedly fraudulently joined defendant, Dolloff of New Mexico, diversity jurisdiction exists under 28 U.S.C. §1332.  Underwriters contends that Nance has not stated and cannot state a claim against Dolloff of New Mexico.  Underwriters argues that, although Nance has named Dolloff of New Mexico as a defendant, he has not alleged -- because he cannot allege -- any legitimate cause of action against Dolloff of New Mexico.  Underwriters

maintains that, even if Nance proves all of the allegations he asserts, he nevertheless would not be entitled to any relief against Dolloff of New Mexico.  Underwriters argues that, consequently, Nance has not "stated a claim under state law against" Dolloff of New Mexico. 16 Moore's Federal Practice § 104.14[2][c][iv][A].

Nance does not agree with Underwriters' statement in its Notice of Removal that the proper parties in this action are citizens of different states.  Nance contends that, even if Dolloff of New Mexico's sole living stockholder and director, Lawrence J. Dolloff, fraudulently but effectively dissolved the corporation, dissolution does not affect the corporation's ability to sue and be sued. Section NMSA, 53-16-24 (1978) provides:

> Survival of remedy after dissolution
>
> The dissolution of a corporation does not take away or impair any remedy available to or against the corporation, its directors, officers or shareholders, for any right or claim existing, or any liability incurred, prior to the dissolution and any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name. The shareholders, directors and officers may take such corporate or other action as appropriate to protect the remedy, right or claim.

Nance also does not agree that it fraudulently joined Dolloff of New Mexico in this declaratory action.  Underwriters' argument that Nance's joinder of Dolloff of New Mexico as a Defendant was "fraudulent" because he does not seek affirmative relief against Dolloff of New Mexico does not take sufficient account of NMRA 1-019A, which provides, in pertinent part:

> A.     Persons to be joined if feasible.  A person who is subject to service of process shall be joined as a party in the action if:
>
>> (1) in his absence complete relief cannot be accorded among those already parties; or
>>
>> (2) he claims an interest relating to the subject matter of the action and is so situated that the disposition of the matter in his absence may:

        a.  as a practical matter impair or impede his ability to protect that interest; or

        b.  leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

That a plaintiff does not seek affirmative relief against a person does not preclude that person from being a necessary party to an action.  Nance contends that this case would arguably be subject to dismissal under rule 12(b)(7) for failure to join a necessary party if he had not joined Dolloff of New Mexico.

        Resolution of the coverage issues will involve a determination whether Dolloff of New Mexico was the agent or alter ego of Dolloff of New York.  Dolloff of New York, in Defendant L.J. Dolloff Associates, Inc.'s, Memorandum in Support of it's Motion to Dismiss or Stay, filed February 14, 2005 (Doc. 4) acknowledges this: "[T]he issue is the relationship between Dolloff of New York and Dolloff of New Mexico."  This issue may have ramifications beyond this suit.  Pursuant to NMRA 1-019A, joinder of Dolloff of New Mexico is needed for a just adjudication of the coverage dispute.

## II.   THE COURT WILL NOT REALIGN DOLLOFF OF NEW MEXICO AS A PARTY PLAINTIFF.

        There is no dispute that Nance already has a judgment against Dolloff of New Mexico.  The question is whether Nance may seek to collect that judgment under a policy of insurance that Underwriters issued to Dolloff of New York.  Underwriters contends that, because Nance already has a judgment against Dolloff of New Mexico, his interests are no longer adverse to Dolloff of New Mexico.  Underwriters argues that his interests are now aligned with Dolloff of New Mexico.  See Davis v. Carey, 149 F.Supp.2d at 596 (holding that no actual, substantial controversy exists between

plaintiff and tortfeasor against whom default judgment has been entered in a subsequent coverage action).

Underwriters urges that <u>Davis v. Carey</u> is substantively similar to this case in that Nance obtained a default judgment against the tortfeasor, a purported insured defendant. Underwriters argues that <u>Davis v. Carey</u> requires the same result here. Underwriters contends that the Court must realign Dolloff of New Mexico as a party plaintiff because there is no justiciable controversy between Nance and Dolloff of New Mexico and because their interests are aligned in that they both will benefit if coverage for Dolloff of New Mexico is found to be an insured under the subject insurance policy.

Nance argues that the Court should not exercise its discretionary power to re-designate Dolloff of New Mexico as a party plaintiff. Nance explains that Lawrence Dolloff's conduct in the state court litigation was at odds with Underwriters' contention that Dolloff of New Mexico's interests are separate and distinct from those of Dolloff of New York. Nance contends that Dolloff unlawfully dissolved Dolloff of New Mexico and falsely certified it had sufficient assets to satisfy any liabilities; Nance contends that the parties would not be before any court if Dolloff of New Mexico had sufficient assets. All actions that Lawrence Dolloff, as the sole living decision maker for Dolloff of New Mexico, has taken on behalf of Dolloff of New Mexico have been inconsistent with what would presumably be Dolloff of New Mexico's best interests as an entity separate and apart from Dolloff of New York. Nance contends that Dolloff has abused Dolloff of New Mexico to safeguard his personal interests and the interests of Dolloff of New York.

As a result, while the two corporations have separate legal entities, Dolloff of New Mexico, which, under NMSA 1978, § 53-16-24, Lawrence Dolloff still directs, has acted in a manner consistent with Dolloff of New York's interests. The Court must therefore presume, for purposes

of deciding jurisdiction, that the interests of Dolloff of New Mexico and of Dolloff of New York are aligned, and that Dolloff of New Mexico will concur with Dolloff of New York's position on the case's issues.  There is no sound reason for the Court to now endorse the alleged fiction that these two Dolloff entities have adverse interests by exercising its discretion to realign Dolloff of New Mexico as a Plaintiff in this matter.

The Court is concerned with the multiplication of lawsuits and whether there is a strategy to burden Nance by involving the federal court.  The filing of the new federal action appears inconsistent with New Mexico's policy, as expressed in its case law, that favors the determination of coverage disputes in the primary action and not in a declaratory judgment action.  See Foundation Reserve Ins. Co., Inc. v. Mullenix, 97 N.M. 618, 620, 642 P.2d 604, 606 (1982)("We believe this is the better rule because it prevents multiple suits and avoids the expense to insured of defending a collateral action brought by the insurer for a declaration of the insurer's obligation to defend under the policy.").

**IT IS ORDERED** that this action is remanded to the Second Judicial District Court, County of Bernalillo, State of New Mexico.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

David G. Reynolds
L. Edward Glass
Carter Law Firm, P.C.
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

-13-

Alan H. Barbanel
James B. Green
Barbanel & Treuer
Los Angeles, California

-- and --

R. Nelson Franse
Lisa A. Chavez
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

     *Attorneys for the Defendants*


Pete V. Domenici, Jr.
Domenici Law Firm
Albuquerque, New Mexico

     *Attorney for Defendant L.J. Dolloff & Associates, Inc.*